Stella Newman, Appellee, v. Woolfs Clothing Company, Appellant.

## Gen. No. 15,158.

1. VERDICTS—*when set aside as against the evidence.* A verdict will be set aside on review as against the weight of the evidence where clearly and manifestly so.

2. TRUSTS—*when converted funds cannot be recovered from third person.* If money is given to another in trust and he deposits it in his own name and pays it out to a third person who is without knowledge of the true ownership of such fund, such true owner cannot recover the same from the party who has so received the same in ignorance.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed June 16, 1910.

UNDERWOOD & MANIERRE, for appellant.

SIMON LA GROU, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The plaintiff sues to recover $1,200 and interest, which she claims was on the 17th of August, 1903, wrongfully paid defendant by Benjamin Newman, her then husband, out of money of hers in his custody. Her statement is that, commencing after her engagement and two or three years before her marriage to said Benjamin Newman and continuously thereafter, she had been paying money saved out of her earnings to him to be by him taken care of for her. These moneys it is claimed were deposited by Newman in his own

name in the Illinois Trust & Savings Bank, and were drawn out by him on his checks from time to time.

Plaintiff and Benjamin Newman were married in July, 1901. On the 17th of August, 1903, the husband had been in the employ of the defendant about four years and during that time had by his own confession purloined more or less of wearing apparel from the defendant's store. As to the amount of the thefts the evidence is not clear. Defendant claims to have missed several thousands of dollars worth of goods. When the thefts were discovered, the defendant believing Newman to be the guilty person, sent for a city detective, "for the purpose of having the influence of a detective to bear on Newman." When Newman admitted his guilt, this officer went with Newman to his apartments and on the way back stopped with him at the bank, where Newman drew out $1200. This was taken back to the store and paid by Newman to the defendant. It is probable from the officer's testimony that Newman at this time supposed he was under arrest and for all practical purposes the officer did have him in custody. After the money was paid to the defendant, Newman was discharged and no further proceedings were taken against him. Since that time, in July, 1907, the plaintiff has procured a divorce from her said husband.

The plaintiff's contention is that the money in controversy was her own "and was held by her husband as a simple depositary," that it was paid by Newman and received by the defendant while the former was under duress and in custody of an officer for the unlawful purpose of compounding a felony and settling a private demand, without plaintiff's knowledge or consent and that plaintiff is entitled to recover back the money so paid. The defendant denies that the money was the plaintiff's and denies that if it was, the defendant had any knowledge or notice that it was hers. Newman testifies that he told defendant and told the detective that he had about $1,525 in the bank, but that the money while in his name, was his wife's. He says that he was threatened with being sent to jail and that he paid it to defendant "to save myself from going to jail;" that he told

plaintiff what he had done immediately thereafter and that she "went right back" with him to defendant's store and demanded the return of the $1,200. The plaintiff also states that she went immediately over to defendant's store on the 17th day of August, 1903, as soon as she learned from her husband what had been done, and demanded the return of the money. This the defendant's witnesses deny. Plaintiff testifies to earning about $225 a month, and that the money was put in the bank account, from which her husband checked it out "for little things we bought, just a few things;" that she paid the grocery bill herself in cash, and that all that money in the bank was hers. Upon the question whether or not Newman told the defendant's agents at the time of the payment to them of the $1,200 that the money was not his own and was his wife's, three unimpeached witnesses testify that he did not so state. Against the testimony of these witnesses stands only the testimony of plaintiff's former husband, a confessed wrongdoer. The preponderance of the evidence on that question is clearly with the defendant. The evidence tending to show that the money in bank was the plaintiff's, and her own earnings, is not in all respects satisfactory and is far from being convincing. If it be true as claimed by defendant that the dishonest husband took large quantities of defendant's goods, it may be that the money in bank in Newman's name and claimed by plaintiff was in whole or in part the proceeds of Newman's thefts. The burden is upon the plaintiff to prove her title by a preponderance of evidence, and this burden she has failed to meet.

Complaint is made of certain instructions given at request of plaintiff's counsel. The first of these is inaccurate, but not reversibly erroneous. The other instruction is as follows:

"The court instructs the jury that if they find from the evidence in this case that the plaintiff placed her own money in the hands of her husband to hold in trust for her, for the purpose of saving the same for her, that would constitute the husband the agent of the plaintiff for that purpose, and the husband would have no right to use said money as his own or to pay it out in payment of his own obligations, without her knowledge or consent."

This is true as far as it goes. But it does not go far enough. The rule of law applicable is well settled in Charlotte Iron Works v. Am. Ex. Nat. Bank, 34 Hun (N. Y.) 26–30, as follows: "As a general rule where the trustee or agent has converted the subject of his trust or agency into money and pays the same in due course of business in discharge of his own indebtedness to one ignorant of the nature of his title, the payee acquires a perfect and indefeasible one as against the real owner. In such case the right to follow the money by the principal is gone." The court quotes in that case from Stephens v. Board of Education, 79 N. Y. 183, as follows: "It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor. Money has no ear mark.   *   *   *   *   It is generally impracticable to trace the source from which the possessor of money has derived it. It would introduce confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to a risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to third persons dealing with him and receiving it in the due course of business and in good faith upon a valid consideration." In the case at bar the defendant claims to have received the payment in controversy in good faith, in payment of a part at least of a debt due it from the payor for goods by him wrongfully appropriated. The burden is upon plaintiff to sustain her claim to the money and to show notice to defendant by a preponderance of evidence, and this she has not done.

The judgment of the Circuit Court must therefore be reversed.

*Reversed.*